[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff (PLTF) initiated this action against the defendant (DEFT) on May 29, 1990, seeking a dissolution of the marriage, custody and support of minor children, alimony, allowance to prosecute, a conveyance of the DEFT's interest in real estate and further equitable relief.
This matter has been bitterly contested throughout many pleadings and a number of hearings. A number of pendente lite orders have been issued. The first set was entered by Judge F. Freedman on June 25, 1990, under an agreement of the parties. (See Transcript of 6/25/90 in the file). Acting on the PLTF's "Motion For Contempt" which charged the DEFT with improperly removing from the family residence items of personal property, Judge Freedman, on August 20, 1990, ordered the DEFT to return the property on August 25 and 26, 1990. (See File #108). Also, on August 20, 1990, prior pendente lite orders of June 25, 1990 were vacated on a finding that prior financial affidavits were misleading. New orders were issued that required the PLTF "to pay the mortgage and other items that the defendant was previously ordered to pay. Defendant is to pay $147.50/wk/ck. Prior orders on medical insurance and other orders are to remain the same." (See File #111).
In addition, on August 20, 1990, the DEFT's motion seeking to deny the maternal grandmother any contact with the two grandchildren was denied.
On December 17, 1990, Judge Gordon entered orders on various motions that had been filed relating to questions of visitation, support, methods of repayment of support arrearages, and restoration of household furniture, tableware, silverware, utensils, etc. Again, dates were set for the return of personal property items referred to above, together with the imposition of $25.00 daily fines for each day after January 1, 1991 that the DEFT failed to return the property. Orders were also issued providing for the apportionment of any losses to the benefit of the PLTF against any interests in the assets of the parties that might in the final orders be distributed to the DEFT.
The DEFT filed on December 20, 1990, a written motion seeking a reopening of the court's earlier order requiring him to return all property items alleged to have been taken by him. He had been found in contempt at the earlier hearing and the fines imposed. The court (Gordon, J.), on March 5, 1991, confirmed the contempt CT Page 1320 finding but vacated the $25.00 per day fine. Additional orders were entered providing that "Items not returned to the plaintiff are chargeable against the defendant. The plaintiff may prove the value of these items at the time of trial, and receive a credit on the property distribution. Defendant is to pay $500 counsel fees to Attorney Solomon within 60 days." (See File #137).
GENERAL FINDINGS
1. The parties were married in Southington, Connecticut, on April 23, 1982.
2. The parties had lived within the State of Connecticut for more than one year prior to the filing of the writ on May 29, 1990.
3. There are two minor children of this union, whose names and dates of birth are: Sarah Chymbor, October 15, 1984; and Matthew John Chymbor, February 18, 1987.
4. Neither the parties nor the children have ever received public assistance from the State of Connecticut or any political subdivision thereof.
5. Both parties testified that the marriage had broken down irretrievably with no reasonable prospect of a reconciliation. Having heard the parties and noted the present animosity existing between them, I concur and enter a finding that the marriage has broken down irretrievably.
6. I made reference to the animosity between the parties. I also find that they will have a very difficult time agreeing on beneficial action for the children. The PLTF seeks sole custody of the two minors and the DEFT seeks joint custody with a concession of physical custody to the PLTF. However, the DEFT requests that disputes on major issues relating to the children's health, education and welfare be referred to the court for decision. This file is now more than crowded with many motions filed by the parties with continuing disputes. Joint custody is unrealistic. The PLTF has had the greater and closer control over these children and has done more in administering to their needs. The DEFT, since the separation, has failed to contribute to the support of these two children. His excuses for not doing so are unacceptable. The mother has been a good caretaker of the children. I find that it will be in the best interests of the children that sole custody be ordered in this case and that it be awarded to the mother. The DEFT shall have reasonable rights of visitation to be specified.
7. While the PLTF is not completely without fault during the CT Page 1321 marriage, I do find that the DEFT bears the major responsibility for the irretrievable breakdown. The DEFT is found to have been physically abusive of the PLTF on a number of occasions, causing her physical injuries to the head and face and other parts of the body. He has also abused and humiliated the PLTF in his speech, especially when under the influence of alcohol.
8. The PLTF was born on March 19, 1961, and so will be 31 years old on her next birthday. The DEFT was born on June 22, 1957, so that he will be 35 years old in June of 1992. This is the first marriage for each of them. The DEFT completed four years of high school and the PLTF advanced through one year of college. The PLTF at the time of the hearings in this case had been working as a teller at the Cheshire branch of the Centerbank of Connecticut. She was working 31 hours per week at a gross pay of approximately $213.50. Over the ten years from 1980 to 1990, the PLTF has also worked in her home and outside the home in the employ of others and on her own as a hairdresser. At the time of the hearing she reported no earnings from this work. She was planning to work only at the bank. Other outside work was too stressful she said.
After high school the DEFT worked for about nine months as a shipping and receiving clerk in Cheshire, Connecticut. There then followed a number of varied jobs: about two years work in a Southington bank where he met the PLTF; then as a postal carrier for about five years, during which he married the PLTF. In July, 1977, he left the postal service to start up his own paper hanging and painting business which continued to January, 1991. He testified that he closed down this business because he could not operate profitably given the poor economic conditions prevailing in the state. After a period of unemployment, he secured jobs as a produce clerk in a grocery store and a baker's assistant in . supermarket, working the two jobs concurrently at the time these hearings were held.
9. The DEFT testified under cross-examination that his last painting job was performed in March, 1991. Further, that he made the following deposits representing payments received for jobs he had completed in 1990: 1) on 10/26/90, $1258.00, 2) on 12/21/90, $552.00; 3) on 1/3/91, $1807.00; and 4) on 1/15/91, $8,043.85. Thus, in this latter period of approximately two and one-half months, he deposited $11,660.00 from jobs of his painting and papering business. He also testified that he received a payment of $445.00 on March 6, 1991. These deposits add up to $12,100.85. The PLTF testified that the family had always lived comfortably on the DEFT's earnings.
10. The DEFT stated that he terminated his business because of the general economy. However, he presented no corroborative CT Page 1322 evidence with respect to the painting business in his area of operation. I am not unaware of and insensitive to the widespread reports of problems relating to working conditions in this state during 1991. However, I repeat that the DEFT offered no other witnesses or documents, in the course of the trial relating to the painting and wall papering business to substantiate his claim. With respect to his testimony at the hearings, I noted that at times he was too glib and at other times appeared evasive, which on the whole pre-empted me to find much of his testimony not credible. He did not testify to any specific physical or mental disability wherein he as an individual would be unable to retain a significantly greater earning capacity than that of the two jobs he undertook after closing his own business. He gave no testimony either of any substantial efforts to secure other employment in his field of work. He did testify that he was retaining his business equipment. There is also a substantial amount of paint which he claimed had gone bad. I conclude that the evidence shows that the DEFT has clearly demonstrated a greater earning capacity as a painter and paper hanger than his actual earnings from the two jobs in the grocery store and supermarket. See, Hart v. Hart, 19 C.A. 91 (1989). He has gone too long without providing adequate financial support to the PLTF and his two children. He also failed to provide for them when he had the funds, choosing instead to pay others. I do believe that he is intentionally shirking his responsibility to provide adequately for the PLTF and his children. This means that he has intentionally sought and accepted the jobs that he has which are easier to perform and provide a lower income.
11. The DEFT's first financial affidavit (F.A.) of June 25, 1990, reported his business equipment at a value of $6,660.00 plus $200.00 for paint on hand. He reported at that time gross weekly income of $698.00, and total deductions therefrom of $689.00. And yet, he also reported $418.00 as his weekly expenses. His business bank account had an average amount on deposit of $1650.00. The joint savings account was approximately $7,000.00. On his second F.A. of August 20, 1990, he reported $518.00 weekly gross earnings with $590.00 of deductions from his business, thus operating at a weekly loss of $87.00. Again he had heavy weekly expenses outside the business of $491.00. The first F.A. listed no liabilities but the second showed $11,115.00. This included an alleged loan of $10,000.00 from his parents which was never established beyond his statement. His parents attending the hearings, gave testimony, but did not verify the loan of $10,000.00. The DEFT's second F.A. continued the equipment at $6,600.00. The paint item disappeared. The business account was reduced to $75.00 and the joint savings account was down to one-half. The PLFT had withdrawn one-half therefrom. The DEFT had two IRA accounts which remained constant in both F.A.'s and listed the following: Equity Fund at $9,047.00 and Global Fund at CT Page 1323 $3,470.00. The DEFT's third F.A. of December 17, 1990, reported gross weekly income of $364.00 from his painting business with deductions of only $237.00, resulting in a plus of $127.00. However, his total weekly expenses were at $521.00. His liabilities increased by $500.00. The DEFT's fourth F.A. dated August 27, 1990, reported his earnings on two jobs: Gross weekly wages of $192.00, deductions for withholding and social security at $35.00. His net now was $157.00. His weekly expenses of $465.00 included the $295.00 item for child support as ordered by the court on a pendente lite basis. There was a further increase of his liabilities of $6,905.00. In this figure there was reduction of $700.00 on the alleged loan from his parents, $280.00 on the VISA balance, and elimination of $315.00 due Nationwide. However, the Mastercard account rose $1,200.00 and the support arrearage under the court's pendente lite support order was entered at $7,000.00.
13. The principal asset remaining to these parties is the family residence in which the PLTF has resided with the two children since July 7, 1990. After leaving pursuant to an order of the court, the DEFT has been living with his parents. The family residence is a six-room Cape built about nine years ago and is located at 108 Pettit Drive, South Meriden, Connecticut. The original asking price was $66,500.00, but it was purchased through the efforts of the PLTF's father (now deceased) for $50,000.00. The father, who was himself in the business of plumbing, heating and air conditioning, was acquainted with the seller of the house. In addition to the reduction in the selling price, the PLTF's father absorbed the costs involved in obtaining the house. He advanced the original $50,000.00 to the seller. The PLTF and DEFT then gave him $11,000.00 and also gave him a mortgage for the $39,000.00. Subsequently the parties refinanced the mortgage to pay off the PLTF's father.
Each party had an appraiser and the values on the house were approximately $135,300.00 and $156,800.00. However, the PLTF's appraiser, at the hearing, allowed certain adjustments and revised his appraisal down to $149,575.00. PLTF, in August 1991, placed a value of $130,000.00 and the DEFT placed a value of $156,800.00. They both agreed that the mortgage balance then was approximately $52,000.00. Since the separation of the parties, the PLTF, with the help of her parents, has made payments on the mortgage. I find the approximate value of the house to be $143,000.00.
The defendant is in arrears in his support for his children under the pendente lite order of $295.00 per week. He has admitted to being in arrears. I find the arrearage to be $16,225.00 as of February 6, 1992. The PLTF has indicated a willingness to waive her claims for the arrearage of support, the property that has never been returned, money from the IRA account CT Page 1324 used to make up in part a prior arrearage and some funds that he used from their joint account, in return for receiving the full interest in the family residence. I will award her the house and consequently will enter no orders for payment on the other items. There will be no obligation on the DEFT to make any payments on these items.
As to the support of the children, I do not believe it to be equitable to base any order under the guidelines using his present net earnings as the DEFT requests. I will proceed on the basis of his earning capacity. The DEFT should re-enter the painting and paper hanging business. It appears that he was able to meet all his obligations and to do well until the divorce action was instituted against him. I do not accept the figures submitted in Exhibits G, H and I as showing the true state of his business. There is also the difficulty with the IRS as shown by Exhibit J. Although pendente lite orders are based on different considerations from final orders, nevertheless two prior judges have acted on the DEFT's request to lower his payments of support and the figure of $295.00 has remained. The DEFT must be allowed to make the necessary preparations to enter the new business and have time also to get jobs.
In his written claims for relief, the DEFT calculates under the guidelines that he should pay $30.00 per week per child for support. The PLTF in her claims, seeks $295.00 total, in continuation of the pendente lite orders. On her F.A., the PLTF needs $341.00 per week to meet her projected weekly expenses. There appears to be room to reduce these estimates. Until the DEFT is able to meet his earning potential he will not be able to meet the pendente lite order. He presently has a $157.00 net earning figure with deductions claimed only for federal withholding and social security taxes. At this time it would appear equitable to order the DEFT to pay support in the amount of $150.00 per week, or $75.00 per week for each child.
On the basis of the evidence adduced and with a review and application of the pertinent statutory criteria relating to custody and visitation, alimony, support, distribution of assets and payment of counsel fees, the following orders are entered:
1. A decree dissolving the marriage on the ground o irretrievable breakdown may enter.
2. Custody of the children, Sarah and Matthew John is awarded to the PLTF.
3. The DEFT shall have visitation with the children as follows: CT Page 1325
 a. On alternating weekends commencing February 22, 1992, from Saturday at 9:00 a.m. until Sunday at 5:00 p.m.
 b. On the intervening weekends commencing February 29, 1992, on Saturday from 9:00 a.m. to 5:00 p.m.
 c. Weekday visitation shall be on Thursdays from 5:00 p.m. to 7:00 p.m., commencing February 27, 1992.
 d. On the children's birthday they shall both visit with the DEFT from 5:00 p.m. to 8:00 p.m.
 e. On his birthday the DEFT shall have both children on the Saturday or Sunday preceding his birthday, if he shall so elect. If he prefers to have visitation on his birthday, when it is not on a Saturday or Sunday, the hours shall be from 5:00 p.m. to 8:00 p.m. The DEFT shall notify the PLFT at least seventy-two hours in advance of the Saturday or Sunday that he wishes to have the children.
 f. The PLTF shall have the children on her birthday. If this shall fall on a day of visitation for the DEFT, his day of visitation shall be omitted or cancelled.
 g. The PLTF shall have the children on Mother's Day; and the DEFT shall have them on Father's Day, but from 9:00 a.m. to 5:00 p.m. If Mother's Day comes on one of the DEFT's overnight weekend visits, he shall return the children to their home on Saturday at 5:00 p.m. He shall have his overnight visitation the following weekend as compensating time. The regular schedule shall continue thereafter.
 h. Each parent shall have the children exclusively for a two week period to be designated as a vacation visitation period (V.V.P.). The V.V.P. shall be taken during the months of July or August. The DEFT shall select his two weeks first in 1992 and give written notice of his selection to the PLTF to arrive not later than May 31, 1992. The PLFT shall thereafter give her written notice to the DEFT of her selection, which notice is to arrive not later than June 30, 1992. The same procedure shall prevail in 1993, except that the PLTF shall have the first selection and this process of selection shall be on an alternating basis. If either parent for any reason shall not wish to or not be able to enjoy the full V.V.P. with the children, he or she shall notify the other.
Each parent shall notify the other of the itinerary for CT Page 1326 each V.V.P. and shall provide telephone numbers to permit communication between the children and the parent. The children may be taken outside the State of Connecticut during the V.V.P. but the distance shall not exceed 300 miles from the City of Meriden. The DEFT shall be responsible for and pay to the PLTF only one week's child support during his V.V.P. All other visitation orders shall be suspended during the V.V.P.'s.
i. Other holiday visitation shall be as follows:
 (1) For Christmas 1992, the DEFT shall have the children on the day before Christmas from 12:00 noon to 7:00 p.m.; and on Christmas Day from 4:00 p.m. to 8:00 p.m., and on all the even years thereafter. In 1993 and on all the odd years thereafter, the DEFT shall have the children on the day before from 4:00 p.m. to 8:00 p.m. and on Christmas Day from 11:30 a.m. to 5:30 p.m.
 (2) The DEFT shall have the children from 4:00 p.m. to 8:00 p.m. on the following holidays each year: New Year's Day, Easter, Memorial Day, Fourth of July, Labor Day and Thanksgiving. He shall make his own arrangements to celebrate any other holidays on his regular visitation days. Whenever the Fourth of July falls within one of the V.V.P.'s, the parent having such with the children shall enjoy exclusive visitation with them.
 (3) The children will reside in the State of Connecticut. The PLTF shall not change this residence of the children without giving the DEFT sixty days written notice, by certified mail, return receipt requested, of any such intended change of residence.
(4) The PLTF shall maintain such medical and dental insurance as available through her employment for the benefit of the two children. The DEFT shall reimburse her, whenever she is charged, one-half the monthly premium cost for the children's coverage. The parties shall pay equally the cost of any of the children's uninsured/unreimbursed medical and dental expenses. In the event the PLFT no longer has medical insurance available through her employment, then the DEFT shall provide such medical insurance equivalent to that now provided by the PLTF's employer and the parties shall share equally the premium cost for the children's coverage. The provisions of this paragraph are subject to Conn. Gen. Stats. 46b-84 (c).
(5) The DEFT is ordered to designate his children to be sole CT Page 1327 and irrevocable beneficiaries of the $100,000.00 term insurance policy with the Mass. Indemnity Co., which is set forth in his last F.A. until the youngest child becomes eighteen. If there is none at this time, then he shall obtain a $100,000.00 term life insurance policy within 180 days to satisfy this order.
6. The PLTF is ordered to designate her children to be sole and irrevocable beneficiaries of the $50,000.00 insurance policy with the Metropolitan Ins. Co. as set forth on her F.A. If there is none, then she shall obtain the same within 180 days.
7. The DEFT shall pay to the plaintiff the sum of $75.00 per week for the support of each child for a total of $150.00 per week commencing February 14, 1992. One-half of this order or $75.00 per week shall be subject to an immediate wage execution.
8. The DEFT shall pay to the PLTF as permanent periodic alimony the sum of $1.00 per year. This order shall terminate upon the happening of the first of the following: the remarriage of the PLTF or her cohabitation with an unrelated male pursuant to statute; the death of either party; when the youngest child reaches his eighteenth birthday.
9. The DEFT shall convey to the PLTF all his right, title and interest to the real estate at 108 Pettit Drive, South Meriden, Connecticut. After the conveyance of title to the PLTF, she shall be solely responsible for the payment of the mortgage, real estate taxes homeowner's insurance premiums and all costs of repairs as well as any and all claims that may arise. She shall hold the DEFT harmless from any such charges, expenses and claims and shall indemnify him for any damages incurred, including a reasonable attorney's fee to defend himself.
10. The DEFT's business tools and equipment are declared to be his sole property.
11. The 1985 Chevrolet truck is declared to be the DEFT's sole property; and the 1987 Ford Tempo is declared to be the PLFT's sole property.
12. The parties shall divide equally the share of Cenvest and Shawmut National Bank or they shall sell the shares and divide equally the net proceeds, if they cannot agree on the division of the shares.
13. The PLTF is awarded as her sole property all of the personal property presently located at the family premises, 108 Pettit Drive, South Meriden, Connecticut, except the DEFT's own papers, personal property including any of his old business equipment. CT Page 1328
14. The DEFT is ordered to pay the sum of $500.00 to Attorney Solomon as previously ordered by Judge Gordon. Payment is to be made within two months.
15. The DEFT is ordered to pay to the Internal Revenue Service the unpaid federal taxes for the tax period ending December 31, 1989, together with all statutory additions to the time of payment. The DEFT shall hold the PLTF harmless from any liability and shall indemnify her from any damages including reasonable attorney's fee.
16. In view of the award of the home to the PLTF, the DEFT is ordered to pay the sum of fifteen hundred ($1500.00) dollars on account of PLTF's counsel fees. Payments are to be made in equal monthly installments of $100.00 commencing March 2, 1992.
Counsel for the PLTF is requested to prepare a judgment file which shall be forwarded to counsel for the DEFT prior to being submitted to the undersigned for approval and signature.
John Ottaviano, Jr. State Trial Referee